If it pleases the Court, David Rosenfeld, on behalf of Ironworkers Local 433, I'd like to reserve five minutes for rebuttal. All right. This case comes before the Court without the kind of thorough briefing you would normally have in a board enforcement proceeding because it was done by motion. So I'd like to take some time to explain why we have such a live dispute and some background about the very narrowness of what we're asking this Court to do as a way of explaining what the secondary boycott laws are about, because they're really not developed in our briefs. Counsel, were you going to address the ripeness of this case, of this appeal or this motion? Do we really have a live controversy here? That's what I meant by we have a live controversy. Okay. We have a union that's subject to contempt proceedings if it violates the law. And the government's position is, to me, a very ironic position. They're saying, in order to challenge these orders, we have to disrespect the Court and violate these court orders. And while we're ---- But these orders have been in effect for a long time. That's why I'm curious as to why now. Why is it right now? Because there's much more prevailing way to work, much more of it's being done nonunion. We have a particular contractor we've identified in our initial declaration, R&D contractors, that's doing a lot of public works. We have them on a big project in Southern California, the Cascade Union High School District, and we want to picket these governmental entities that in our view are doing the wrong thing of using low-road contractors. But do those events change the law? Well, that, Your Honor, is a different question, which is has the law changed since these orders were entered to give this Court under Rufo the authority and power to modify what this Court has already done. And so we have a live dispute. Mike Silvey's most recent declaration says R&D is on the job in Cascade now. If we had the right, we'd put a picket up in front of the Cascade Union High School District saying unfair, low-road contractor, Cascade Union High School disrespects workers by using a low-road contractor. You say in your briefs that the reason this is ripe is because the federal government is thinking of doing something in the infrastructure, and you claim that also in California that's happening. That seems to be a little speculative. If we're going to decide that, it seems to me that in Washington nothing is firm. How does that all of a sudden get ripe? Well, it gets ripe because we haven't challenged the court orders since they were implemented, in part because it's such a heavy fine. No. What I'm saying is that you read your — you talk in your brief about something that is going to happen in the future because the federal government now wants to do a lot of work in infrastructure, and then your brief says that California is going to do the same thing. That's all political. We haven't seen anything that's come out of that that we could say we're going to base our rulings on it. That's why on the ripeness issue, why do you make that jump from what is in political controversy now into something we can handle in the court? Because not only did I raise that general point, I said there is a very specific dispute in front of us. The State Union High School District is about to build this big high school and do it with a non-union, in our view, RAT contractor, low-road contractor. We want to picket that high school district when that work starts. It's a very specific dispute, and we say there will be other disputes like that that will arise. And since we filed our initial motion, that work has begun, we'd like to put a picket up there today or tomorrow and advise the public of our dispute, because that's a way of bringing pressure on public employers to do the right thing. We have a specific dispute, and we can't do — we have no means otherwise of bringing that to the public's attention by a picket, because we're subject to contempt. We have a prior restraint by these court orders and the two contempt adjudications. And we know the board, every time we've violated the law, has gone after us, because we've got broad orders, and in two cases, they obtained consent contempt adjudications with heavy fines, and we had to pay attorney's fees. And I was involved in these cases. So we know if we make a misstep — Kennedy. Tell me, what is the specific program that you say is in Southern California that's in dispute? It's what Mike Silvey, who's the current business manager, says, that Castaic Union High School District is building a high school. It's a big high school project. Where? It's in Castaic. Castaic. That's a town north of L.A. I know. Right. And so they're building this high school. That's it? They're using a nonunion contractor right today to do the ironwork. Local 433 represents ironworkers who erect steel buildings. And it's based upon that that you have in your brief about what's going on in the national government in California because one high school's building. Not exactly. We have two parts to Silvey's declaration that was initially submitted. One, there's a lot of this work around, a lot's being done nonunion, more than there was in the 80s and 90s, and we want to go after some of these projects. But specifically, to avoid the Wolfson — to meet the Wolfson issue, we said there's a very specific project that's coming up. This is in the initial declaration that we want to picket. And then when, Your Honor, when this court issued its order, I supplied another declaration from Mike Silvey which said the job is ongoing. We put a picket up there today to make this point with that particular school district, which is a union high school district, which means it draws from a large community of high school students. And so it happens to be a very large project that will go on for months at least in terms of the steel erection, which is what R&D does. So there's a live dispute today, right now, that we would like to put a picket up. And in the Wolfson case, you had somebody ran for court, for judgeship, and he was concerned about the state bar rules, that he'd be disciplined. He wasn't disciplined. He lost the election. And yet this court said, well, he may run again in the future, and there's plenty of rightness to that. And it's the same thing as the Italian colors. We have a very specific live dispute. To use the words of the board, a concrete fact pattern. A school is being built. It's a public work project. It's being built by a public entity. There's a nonunion contractor, a low-earned contractor, and the union today would go out and picket up for these court orders. So let me address, if I've met the narrowness of what I'm asking for in this case, because that explains the secondary boycott laws. There are really two parts of the secondary boycott laws. There's 8B4 single I that says we can't picket to induce people to stop work to support our dispute of neutrals. So, for example, we can't put a picket up at the Castaic Union High School District at a construction entrance to invite workers to stop work, because that's unlawful under Section 8B4 single I. And the broad order prohibits us from that conduct, and we're not asking the court to touch that. So we understand the rules about not inducing people to cease work. 8B4 double I, which is the other part of the statute, is what's before this court. Although written broader, in this application it's much narrower. 8B4 double I says you can't engage in activity which coerces, restrains, or threatens a person, the Castaic Union High School District, to cease doing business with somebody. So any form of picketing of the Castaic Union High School District, which has a purpose, and, Your Honor, you raise this political purpose, we can have a political purpose of getting the high school district to do the right thing or to contract in the future. But it makes no difference under the statute, because as long as any purpose is to restrain or coerce the district into not using R&D, it's unlawful and subject to contempt. So the only thing before this court that we're asking is to modify that part of these court orders that prohibit us from engaging in 8B4 double I restraint or coercion of a public agency. Now let me just make this less clear or more clear that when you picket, if we were to picket at a construction entrance and workers were to walk off the job, that's 8B4 single I and we're not asking that be changed. But that does have the effect of coercing the school district because all of a sudden their job is shut down. So as it turns out, the way the statute works, if you put a picket up and stop people from working, it's 8B4 single I and double I. And virtually all the cases that have resulted in these barred orders are 8B4 single I cases where local 433 picketed caused job shutdowns. And virtually all of the Supreme Court cases except Safeco and Tree Fruits are 8B4 single I cases where there was picketing and strike activity. The American Radio Association case, the IUE case from the 1950s, which is the seminal case in this area, in virtually every case there was job shutdown, people were induced not to work. Roberts. Can you just address the Doar case and explain why you don't think that presents a barrier to our granting you the relief you seek here? Because all that the Supreme Court said in Doar was, without addressing any of the implications of saying you can't picket the government, because plainly, I'm not contesting, I'm not conceding, but not contesting. But why would government entities be treated differently in that respect? That's what I still have not figured out from your argument. I understand why you brought the argument in the other case. Reed seemed promising, but we shut that down. And so I just don't understand now. How do you think we're going to carve out this sliver just for public entities? Why would they be treated differently? Well, I'm, again, not asking they be treated differently for 8B4 single I purposes, only for 8B4 double I, because we go back to Safeco. Safeco is the 8B4 double I case where a union pickets to have customers stop doing business. Well, the government doesn't stand in the shoes of a private insurance company selling insurance. The government stands in a much different position of being a governmental entity that has to respond to the democratic wishes of the public. And there's no more fundamental way to bring to the government's attention a problem than petitioning activity and speech activity. And so the issue in this case, as narrow as it is, is simply if we have the right to engage in petitioning activity, to ask the government to act in a different way as a fundamental democratic right. Don't we have the right to leaflet the government? We do under DiBartolo. We have the right to put up a big banner. Two iron workers could stand with a banner. Castaic Union High School District, unfair, uses low-road contractor. We can go to meetings and ask the school district to do everything. And what DiBartolo says, it is perfectly lawful to engage in a secondary boycott by asking the government to do this. Petition? I mean, the First Amendment is abundant rights. It's assembly. It's petition. It's free speech. And this is all involved in this, where we're asking simply the right to bring our message, which we have the right to do through many other ways, by this one method of having one or two workers peacefully stand with a sign. You know, imagine the bannering issue, which sort of is kind of the way I've always tested this. If I have two iron workers standing with a big banner and handing out leaflets, that's okay. But if they put the banner down and pick up two signs on a stick, that's not okay, and they go to jail, and we pay big fines. And so I don't think DORA addresses that. And the board itself has actually sort of tangentially addressed this in various cases. There's at least one case, for example, where a union picketed a public entity because that public entity wasn't complying with some federal laws, the Davis-Bacon law. And although there were some non-union contractors who weren't complying, the board said in this case, it's Painters Local 141. It's not signed the briefs. It's okay to picket the government as long as an object is not to have the government stop doing business with a non-union contractor. So picketing the government's okay as far as the board's concerned unless it has this object. And I go far beyond Reed because I think what First Amendment jurisprudence says is you can't, if you're going to look at the contents, you've got to apply strict scrutiny. And, Judge Watford, I will stand up here and say two things. The Supreme Court has never in an 8B4 or board case applied strict scrutiny. The last case before the Court to deal with the First Amendment in the act was They've never addressed it. And number two, when Mr. Hobson gets up, you ask him, can he find a case, cite a case to this Court, because I've looked high and low, mostly high, where the Supreme Court has ever affirmed, or this Court, an order prohibiting picketing by any entity because of what's on the sign. The answer is never. The answer is that this Court, like in the Washington Metropolitan Transit case, has always had to face what is a public forum and what you can do in a public forum. That's not an issue here. The only question is, can under Reed, with a content-based analysis, both restrict the content of what's on the sign and apply it only to a union like Local 433? What's even more pernicious about this is every other person could stand in front of the Castaic High School Union School District with a sign. Unfair to women. Unfair to dogs. PETA could be there. Unfair contracting. R&D could stand out there with a picket sign saying, we like being here. A competitor could put a picket sign. But Citizens United, one of my favorite cases, makes it clear you cannot discriminate based on the speaker. So we have speaker discrimination, content discrimination, and hearer discrimination because we're limited as to who can get our message apart. I think you should go back to the Supreme Court. The Supreme Court may well agree with you. I just don't think that we're in a position to grant you the relief you want, given the Supreme Court cases that are in place now. But I hear you. I think you're right. There is something to your argument. I don't dispute that at all. Well, let me just take a minute to address that. I don't want to save my time for rebuttal. We can't get this case in the Supreme Court except by contempt. That's the only direct route. You can't take cert from every state? I can take cert from this. Well, why don't you? That's what I'm saying. Because then we're going to – I'm not hopeful that that will work. But if this Court decides that – remember, in the Local 70 case, the Court said, assuming without deciding that Reed changed the picture – and that's not the only case that's changed the picture here. But only if this Court says, we see the argument here, can I get the Court's attention. I realize that's a problem. But let's just go back to the fundamental problem. While all this is going on, we can't pick it. This is the worst form – the courts have used the most pernicious form, worst form of restriction. It's a prior restraint. It's these courts' orders that restrain us. It's contempt. And we want to go pick it today, not wait for some resolution down the road, which – which, by the way, every other union could pick it without subjecting themselves to this contempt remedy. The Board could go after them and for labor practice, you see. So let me save my three minutes for rebuttal. All right, thank you, Counsel. Good morning. Good morning. May it please the Court, Kevin Hobson for the National Labor Relations Board. The instant motion for further proceedings in this sparse fact pattern that have been presented are poor vehicles for a constitutional challenge to NLRA Section 8b4's prohibition on engaging in secondary picketing activity against public entities. Do you – do you think that the only vehicle that would allow them to present, I guess, a nice, ripe, meaty challenge would be if they actually subject themselves to contempt, or is there something short of that that you think would work? The lack of a concrete fact pattern here suggests that the only way for an actual fact pattern to present a case in controversy here would be for the union to engage in some sort of activity. Well, but they want – they just have told you – I mean, you heard this morning and we saw in the declaration that there is a specific project that they would go out there and picket today if they could. And I don't know what – how much more concrete do we need in terms of a fact pattern other than them going out there and then you guys pursuing them for contempt. Well, unfortunately, the plans that the union has presented here are not specific enough. If you look at what the statute actually prohibits, it prohibits threats, coercion, and restraint with an unlawful secondary objective. And those terms are not defined in the statute. So any enforcement is heavily fact-specific. So just by way of example, I'd like to walk you through what the Board would look at in trying to decide whether or not to enforce a case in the private context. Okay. But please do that. But hold on a second. They're saying that we – our reading of these contempt orders that are in place that our court has issued prohibit us from doing this. And that's the only reason why we're not doing it. The fact that you guys might decide to take this factor into account or not in deciding whether to pursue contempt, I don't think that's the determinative factor. It's – there is a restraint that they feel compelled to abide by, and I don't see anything unreasonable about their reading of our prior orders. So unless you're going to address that, I'm not sure what difference it makes, how you're going to walk through this hypothetical analysis. Because of the open questions that exist here, it's heavily debatable whether or not an imminent harm actually exists with regards to contempt. And the reason I say that is that if you look at picketing against, for example, a private employer where we have much more case law than we do against a public entity, is that in determining whether or not to go forward, first you have to figure out whether the conduct is primary or secondary in nature. We're not really sure here. Then you have to determine whether it's picketing activity. They may call it picketing, but picketing has a very specific definition under board law and in the circuit courts. So to say that you're going to picket doesn't necessarily answer the question of whether it's unlawful picketing in the sense it's been established. And then you have to determine whether, if it is picketing, whether it's a threat, coercion, or restraint, which in some instances could be determined based on whether or not there's a confrontation element. So, for example, if they were picketing 100 yards out in the parking lot across from a building and not necessarily in front of a storefront, there wouldn't necessarily be coercion and it wouldn't be prohibited. So it's questionable whether, based off of what they've presented as what they want to do, that it would actually be prohibited by the statute. But our case law does not require somebody to take the chance by engaging in the conduct. I mean, you're just saying, well, there's a line and there's a sort of gray area and you get closer and closer, but they don't have to take a chance on doing something that might subject them to a penalty in order to challenge this. I guess I'm just puzzled as to why you're suggesting that there's not a ripe dispute here. I mean, I'd love to hear your argument on the merits, but I don't understand why you're trying to fend this off. Why don't you want us to just dive in and resolve the merits? Why are we at a disadvantage in terms of addressing the core First Amendment argument they're presenting? The Court's at a disadvantage because, in part, no court or the Board has yet decided whether picketing a governmental entity is, as a concrete rule, threatening, coercive or restraining. So to decide whether or not the union can engage in this kind of picketing would be before the NLRB, which is the agency chosen by Congress to interpret and enforce the law, before the NLRB would be given the first shot at determining how these terms are applied and what they mean. It sounds to me like you're just saying, go find another union that's not subject to one of these prior adjudications to engage in some conduct that you all can then pursue them for and then we'll have an adjudication from scratch. That's what you're proposing? These folks, in the meantime, just, sorry, you're going to just be sidelined. It's too bad? Well, the very fact that it's unclear that engaging in this type of activity, which is ill-defined, would result in contempt, I'm not sure how this particular union is in any worse situation than another union which has to obey the same statute. It's the law. And if you look at the case law, the Local 254 case that was cited by the union, there are sufficient questions here that even the First Circuit said that because there's no public entity, that it would be one factor which would not necessarily be dispositive of whether we want contempt, but it would certainly weigh into both our determination and the determination of the court as to whether or not there would be contempt. It's not a foregone conclusion. And for the union to state in its motion for a stay that it's subject to automatic fines for contempt is factually inaccurate. If you actually look at the language found in the order, it says that the union is subject to a fine of up to $15,000 for an infraction. There's discretion both at the board level of what the board would seek in contempt, but there's also discretion in the court as to whether or not, based off the conduct, it would warrant such a fine. In this case, the record actually shows that the union here has not engaged in the kind of picketing activity that they claim to want to engage in. And so that would be one of many factors that this Court would look at in determining whether or not fines would be appropriate and if contempt would even have occurred. Could you entertain a question? Sure. We have this Thomas case in bank in which we talk about whether it's right for us to get into the action. And we've been rather specific. I just wonder how you interpret those factors as to whether or not they've been met, if you remember what they were. If you need some help, the first factor is whether there's a concrete plan to violate. What would be the position of the board as to whether they've established a concrete plan? The position of the board as to whether or not a concrete plan has been established is that a concrete plan has not been established. Because? Because they've not specified what kind of activity they wish to engage in, so it's unclear that it would be picketing for starters. Secondly, by saying in their motion for a stay that they wish to bring to the public's attention certain safety and wage issues surrounding this particular contractor, it's unclear that the intent here is actually secondary in the sense that it's outlawed by the statute. And I say that because it stands to reason that by bringing these issues to the attention of the public, it's not that the union is asking the government, or in this case the school board, to cease doing business with this particular contractor, which would violate the statute. They could instead be asking for the school district and the government at large to instead enforce safety and wage laws, which wouldn't necessarily have the impact of getting the school district to cease doing business with this particular contractor, and it would actually address the union's concerns. Okay, the second factor is whether there's a prosecutorial warning. Has there been one? Are they warned by the board as to what's going to happen? What's your position on that? To date, there's been no prosecutorial warning. There have been no charges filed. And to our knowledge, there have been no acts of secondary picketing of public entities, so there would be no reason for the NLRB to warn the union that it is or would be subject to contempt and investigation. And the third, Thomas, factor, which we decided, in bank, by the way, so it's not going to be changed easily, is the history of prosecutorial prosecutions under the statute. Well, given the history here, there is very limited case law at the board level of unions being prosecuted for picketing public entities, and what case law there is at the board level has come down in opposing ways where certain unions have not been deemed to have picketed unlawfully, whereas others have. And there's even less case law in the circuit court level finding contempt for picketing public entities. And the one case that I'm aware of, the local 254 case, was a case where the First Circuit declined to find contempt because of the statutory questions that remained open. Okay, that's helpful. Thank you. I suppose your opposition will be able to tell us with specificity how the union feels about these factors, which are the basis upon which we have to make a decision. I would also add that even if this Court does deem the instant sparse fact pattern to be an appropriate vehicle for mounting this kind of a challenge, the union still hasn't met the standards of RUFO v. inmates of Suffolk County Jail, and that they've raised no new facts or circumstances, and they've raised no new case law, which would warrant the extraordinary measure of modifying consent orders. And as this Court has already mentioned, these consent orders have been on the books for well over a decade. So if you have no other questions, I'll reserve some of my time for rebuttal, if that's possible. Oh, that's not. This is your shot. Okay. One other thing that I should mention is that there's been a lot of emphasis here on signs, and whether or not the conduct in question is regulated solely because of what's on a sign. And while signage is somewhat important to the activity of picketing, and it's what we picture as laypeople in what a picket actually is, signs in the context of the secondary picketing prohibition are only a very, very small factor, and there doesn't need to be signs for there to be a picket as defined by the NLRA. And just to give you an example, it would be unlawful picketing if you had a group of union individuals congregating near a storefront who, rather than posting on their signs what it is that they're objecting to, they provided a letter or a telephone call to the employer in question, or in this case, the government, the day before, and then went to picket. So the content of the signs is really immaterial here to what is being regulated, which is the conduct of secondary picketing activity. And as Mr. Rosenfeld pointed out, there are a vast number of alternative means available for the union to voice its same message in the same forum to the same people, whether it be through bannering, leafleting, or other means which, in DiBarlo, the court found were non-coercive but merely persuasive. If you have some more time, then maybe you could answer the question. We have to look at the Reid case and whether or not that case requires us to re-look at our ripeness jurisprudence. What's your position? I don't believe that Reid does require a revisiting of the ripeness jurisprudence because Reid, as far as this court indicated in the Teamsters Local 70 case, did not change the First Amendment landscape in a way that matters to the regulation of picketing. Was that a published opinion or an unpublished opinion? I believe it was an unpublished opinion. Now, we usually don't cite them or allow them to be cited, but I suspect that we ought to at least know of your opinion because it would seem that that would be a very important issue that ordinarily would be published if we're going to determine the reach of Reid. But just assuming that it's something we can bring up, would you explore a little further why your position is consistent with the position we took, our court took, in this unpublished memorandum disposition? I'm sorry, could you repeat that? I wish I could. I'm wondering if you could tell me why, with a little more detail, why you feel that Reid does not necessarily change the Ninth Circuit law in relationship to the statement that was made in the unpublished disposition. What does that unpublished disposition tell us other than a statement? Was there some analysis that you liked about the determination in the unpublished disposition that you think we should give consideration to? What was good about that opinion was that the court looked at a great number of cases which were raised to question whether under the First Amendment picketing could be constitutionally regulated. In that case, it was private employers. And perhaps I'm reading too much into the opinion, but it seems that by stating that Reid did not change the First Amendment landscape in a way that mattered to the regulation of picketing, there was a sanctioning of sorts by this court that more recent First Amendment jurisprudence did not address whether or not picketing itself could be regulated, or at least regulated in the manner regulated under NLRA Section 8b-4. Okay, thank you. I have nothing further. All right, thank you, counsel. Mr. Bottle. Judge Wallace, the reason that two-page opinion, which we notified the court about, is so important from our point of view is that the panel said we assume without deciding that Reid changed the Supreme Court's First Amendment jurisprudence, but the court was limited because of the Agostini v. Felton doctrine, which Judge Wadford referred to, because there was a case directly on point, Safeco, which dealt with consumer picketing. And the court, I think, felt it couldn't get around Safeco and was stuck dumping it, in Your Honor's words, in the Supreme Court's lap. I tried and didn't succeed. So that's not helpful at all. But, Your Honor, I want to go back, Judge Wallace, to your question, because Judge Wallace sat on the Italian Colors case that addressed this issue last week. First Amendment challenges present unique standing considerations because of the chilling effect. This isn't just chilling, this is contempt in jail. And I'm offended by counsel saying that maybe the fine would be less than $15,000, it could be $10 or $1, because we shouldn't be fined for First Amendment conduct at all. And then the court went on to say, in order to avoid this chilling effect, the Supreme Court has endorsed what might be called a hold-your-tongue-in-challenge-now approach. We're holding our tongue, our picket sign, because of contempt. And in answer to your question about, he's standing up and saying, well, the union has threatened to picket, but we don't know what they mean by that. That sort of creates a vagueness problem in the whole statute. We haven't addressed that. But we were very clear, because in the initial declaration that Mike Silvey gave, he expressed the purpose. It is an unlawful purpose. Our purpose in referring to picketing the school district, quote, would be to have the public entity choose a different subcontractor. That is an unlawful, cease-doing-business objective. And he doesn't use exactly the same words in the more recent declaration, but he takes words away from our members, has the same effect. So the three factors that the Court addressed in the Italian Kellers are, one, is, is there a concrete plan? Yes. We're going to put up a picket sign. Our purpose is to convince this public entity to cease doing business. Ginsburg-Gilmour. Counsel, the difference between Italian Kellers and your case is, to me, is in the likeness context, because there was a specific California statute that was being challenged and that directly affected the merchants in that case. And so I just, as Judge Wallace had indicated, you're talking about some future projects that you might want to picket, but I just, I don't see the same immediacy that we had in Italian Kellers. Help me with that. Your Honor, maybe I've not been clear about this. Today, in Castaic Union High School District, R&D is on a project. The Board has not suggested in any respect that if we picket, it will not seek the full force of this Court to impose fines or jail sentences. Pursuant to the consent decree. There are two things. Pursuant to the broad orders that were enforced. There are two things here. We've got broad orders that say we can't at any place, at any time, anywhere engage in secondary conduct of any kind, including picketing a government agency. To me, that's what makes this case different from Italian Kellers, because there is a consent order. There are consent orders that prevent you from doing what you now want to do. Right? So that's why I'm struggling with is there a live controversy, because to me, it's just kind of a backdoor way of trying to, again, challenge the consent orders. If I have a moment, let me try to respond to that, because I'm over my time. The argument that was made in the Local 70 case, because I was counsel there, I've been counsel to many of these cases, these 8B4 cases, I've tried many. I've argued these cases in this courthouse, in this courtroom before. So I've done these. We know that if we go out and put that picket sign up, we're subject to a contempt citation. Now, it is true, as counsel says, that the board could say we don't care, we're not going to do anything. But they haven't told us that or you that. And it is true that we haven't attempted this since the consent contempt adjudication. So that kind of raises the RUFO problem. Has there been a change in circumstances, a change in the law that warrants this Court vacating that narrow portion of those orders to say that, yes, Local 433, without risk of contempt, you can picket? And let me just add one thing here, that if this Court vacates that part of the order, we're not home free, because somebody could file a charge with a labor board, the board could prosecute us under the normal procedures, and we'd only be subject to a cease and desist order or potentially another injunction. We at least wouldn't go to jail. And I'm prepared to test that under that. I'm not prepared and my client isn't prepared to risk a heavy fine or a fine or jail for union officers or expensive litigation just to put up a picket sign in this case. And so I think RUFO is meant both because of the circumstances that allowed this Court or should compel this Court to modify the order, as well as the substantial change in the law that has occurred since these orders were entered. Reed is just part of it. Citizens United is part of it. Swisher is part of it. When this Court, the Swisher case is that restored, the Valerick. And what's interesting, and if I can just conclude, this Court struggled, as I've struggled, to describe what is picketing. There's some conduct involved. But every time the Supreme Court has dealt with a conduct case, whether it was if the communication is the primary issue, it's content regulated. But in Swisher, to conclude my argument, this Court came up with what I thought was a felicitous phrase. It's communicative conduct. And that is subject to First Amendment activity. And we cannot engage in that communicative conduct because of these orders. Thank you. Kennedy. What sort of a problem do you have in your case that this comes out of a consent agree? That is, the union agreed that this is what they're going to have. This is the game plan for the future. Now you come back and say, no, no, no. I want to change my consent decree. We've been a little bit cautious about that. Doesn't that give you a problem of changing something you already agreed to? Well, I think the RUFO standard and the other standards dealing with consent decrees really apply the same standard. I don't think that they've applied different standards, whether it's a court order or a consent decree, because the real question is, is there a change of circumstance that's sufficient enough to warrant the court changing what we agreed to in the 1990s, in the early 19, well, the 1990s, given the state of the law at that time? Right. But it's still, it's a type of a contract. Sometimes you're into a contract you wish you hadn't entered into, but you entered into it. And some of our cases sort of take that line that there's a harder burden if you're attacking something you've already agreed to in a consent decree. Does that give you a little bit of headwind in this case? Well, yes, it does to the extent that we agreed at that time because the law was very much against us. At that time and for the future. It doesn't say just at that time. It was a consent decree for the future. Well, let me respond by saying that's only half the problem, because two of the orders we've challenged were not consent contempt adjudications. Two are orders that this Court enforced. So you can't apply the same logic to those that you could to the consent contempt adjudication. And I'll go back to Judge Wadford's point and your point, Your Honor, that at that time nobody, I think, contemplated in the order that this would apply to picketing a public entity. And at that time we'd always picketed. Every case was picketing a private entity. And in the Local 70 case what happened was we asked the Court to rescind the entire broad order. The Court refused on Agostini grounds. So now I come back and say to 433, let's attack this on a very narrow ground, which was not raised in those cases, and the broad orders aren't even based on this kind of picketing, picketing a public entity. And I'll conclude by conceding that if this Court rules that that's a problem and either stays that part of the order or vacates it and then lets the Board deal with it, that is the camel's nose in the tent about this whole 8B4 problem. But I'm happy. All right. Thank you, Counselor. Thank you. Thank you to both Counselors for your helpful argument. That concludes our calendar for this morning. We are in recess until 9 a.m. tomorrow morning.
judges: Wallace, Rawlinson, Watford